## PALMER v. GRAHAM.

It is a general rule that Courts of Equity will not entertain jurisdiction for the specific execution of agreements, respecting things merely personal in their nature. Yet this rule is limited to cases where a compensation in damages furnishes a complete and satisfactory remedy. But in cases where there exists an entire uncertainty in any calculation of the damage for the breach of a personal contract, or the measure of damages is purely conjectural, equity will entertain the case. In such a case, the remedy at law is inadequate and inefficient.

If a vendor sell his place of business and the good-will of his trade, and in his contract of sale, stipulate not to carry on his trade within certain defined limits; a Court of Equity will enforce the specific execution of such a contract, and at the suit of the vendee will, by injunction, restrain the vendor from carrying on his trade within the place specified in the agreement.

So where a partner sells his interest in the good-will of a trade or business, and, on receiving a compensation therefor, agrees not to commence a similar trade or business in the same vicinity, a Court of Equity will restrain him by injunction from prosecuting the same.

In such cases equity entertains jurisdiction by compelling a specific performance of the contract, because the complainant can obtain complete and perfect justice.

So where P. sold his stock and good-will in a business to G. for a specified price on credit, with an agreement that if the property was not paid for within a specified time, it should be returned to him with all the new customers whom G. should obtain in the course of his conducting the business; and G. did return the property, with the names of the old and new customers, when G. started the same business on the old route, and supplied the old and new customers thus returned to P.: The Court awarded an injunction against G. to restrain him from such improper acts, in violation of the original agreement, as he had agreed to return the property embracing the good-will in *statu quo*.

But a contract for the sale of a good-will does not in itself involve any obligation on the vendor not to exercise the same trade. If the vendee of such good-will desires to protect himself from such a contingency, he should do it by an agreement.

*June* 30. THIS was a bill in equity, filed by Palmer v. Graham, in which the complainant set forth, that he had a horse, wagon and harness, and cans for holding camphine oil, an article of merchandise, with which appliances he had for some time before been in the habit of supplying persons residing in certain parts of Philadelphia, in certain streets, all mentioned in the bill; that in the course of this dealing he had obtained a number of customers, as persons who were in the habit regularly of purchasing from him their supply of the article; that by this course of trade, and his attention to the business, he had acquired a valuable property and good-will or custom to himself; that the value and profits were $350 per annum. Under these circumstances, Graham being desirous of purchasing the horse, wagon, cans, &c., and his interest in

the good-will, applied to him therefor, when a contract in writing was made, whereby the complainant agreed to convey to the respondent, the horse, wagon, cans, &c., the route or good-will, and his right to supply the customers on the same, for the price of $300, which the respondent agreed to pay; and further agreed, that he would keep up said horse, wagon, and route, the custom or good-will, &c., and make such additions to the custom as lay in his power, for the space of twelve months, and make weekly payments for the price of the property; and in case the money was not paid within that time, he further agreed to return the horse, wagon, cans, &c., and a correct and full list of every customer on said route, and forfeit all that he should pay on the contract.

It was stated in the bill that the complainant agreed to put the respondent into the immediate possession of the property, and that he did so; and the respondent took the possession of the same, and made sales to customers on the route for a long time; and that he continues to do so. That some time in October, 1849, the complainant having only received five dollars on account of the sale, and finding that Graham did not comply with his agreement, it was agreed to rescind the contract so made between the parties, when the complainant was to have back the property again, and the full enjoyment of his right to the good-will or route, and the benefit of supplying the customers on the same; and in addition, the customers that the respondent had made in pursuance of the original agreement. That the articles of property were so returned to him. But said Graham having become acquainted with the customers on said route, originally transferred to him under the agreement, and others whom he had made by reason of the transfer, he refused to re-transfer the route, good-will and custom, or the list of his customers, as he was bound to do. It was averred that he still continues to supply the same customers in the same manner and on the same route; by reason of which the complainant was deprived of the route, good-will, custom, and advantages of said trade, as well as the price agreed to be paid therefor. A copy of the contract was attached to the bill.

It was prayed in the bill that the respondent should make out a full and complete list of the customers in the habit of purchasing camphine from him, who lived on the route sold, and be ordered to deliver the same to the complainant, and that he should account to him for the profits which had been made by him in said business, before and since the rescission of the contract. And also that said Graham should be restrained from further carrying on said trade of

supplying the customers with camphine within the limits of the route so sold, and from supplying any customers whom he had obtained along the same in the course of his trade carried on under said contract. There was also a prayer for general relief.

An answer was filed by the respondent, in which he admitted the contract as set forth in the bill, and that he did not comply with it, and paid but five dollars thereon, and that the same was rescinded; the horse, wagon, &c., returned, together with a list of customers on the route. It was also stated in the answer, that the respondent had before been engaged in the same business, and that since the rescission of the contract, he had been supplying some of the persons whose names were included in the schedule or list transferred to him by the complainant under the original contract, and that they live on the route so transferred under the article of agreement, and that he was now carrying on said business along the same; but denied that under the contract he was prohibited from so doing.

A motion was made for an injunction, and the case was argued upon the bill and answer under this application by Messrs. *Morris* and *M'Murtrie* for the plaintiff, and Mr. *Doran* for the defendant.

The opinion of the Court was delivered by

KING, President.—This case comes before us on bill and answer. The facts are few and simple. The plaintiff was the owner of a horse, wagon, and the necessary appliances for supplying camphine to persons desirous of purchasing the same. He had commenced and prosecuted the business for some time, and had obtained the custom of various persons living in the southern part of the city, whom he supplied regularly with camphine at their houses. Having established this route, he sold his horse, wagon, and appliances, together with the good-will of the route so established by him, to the defendant on a credit. It was agreed between the parties, that if the terms of the contract were not complied with, and payment made according thereto, the defendant should return to the plaintiff the horse, wagon, &c., together with the list of customers on the route, with such others as he should have in the mean time acquired. The defendant not having made the stipulated payments, returned the horse, wagon, &c., together with the list of customers, to the plaintiff, according to the terms of his contract. But he immediately recommenced the business, and continued to supply the customers on the route originally established by the plaintiff, and who were embraced in the list furnished

to him by the latter, at the time of the original contract of sale. This, the plaintiff insists, is a fraud practised on him by the defendant; and he asks that the latter should be restrained, by injunction, from further supplying the customers on the route so unfairly obtained.

We can entertain no doubt as to what was the true intent and meaning of the contract between these parties. It was, that if the defendant should either pay the consideration money in the time and manner prescribed, or surrender the property contracted to be sold to him, which not only embraced the horse, wagon, and other mere appliances of the trade, but the good-will and custom of the plaintiff, on the route established originally by his enterprise and industry. It is true that the defendant did surrender the appliances of the trade, and the list of customers originally furnished him, but he retained the really valuable element of the business, the good-will. While he professed to return to the plaintiff his property in *statu quo*, he really abstracted from it, for his own benefit, that which constituted its permanent value. That the plaintiff could have maintained an action at law for this breach of good faith, cannot be doubted. But has he not also the more effective remedy in this Court, of compelling the specific execution of the contract, and of restraining the defendant by injunction from any further violation of it? It is true, that, as a general rule, equity will not entertain jurisdiction for the specific execution of agreements, respecting things merely personal in their nature. Yet this rule is limited to cases where a compensation in damages furnishes a complete and satisfactory remedy. But in cases where there exists an utter uncertainty in any calculation of the damages arising from the breach of a contract personal in its nature; where the measure of damages is purely conjectural, equity will intervene; because, though there may exist a remedy at law, yet that remedy is inadequate and inefficient.

The nearest analogies to a case like the present, are to be found in bills brought to prevent a vendor from setting up a trade in the vicinity of a place, where he had formerly carried on such trade, the good-will of which he had sold, under an agreement not to establish a similar trade within certain limits defined in the agreement. In such cases equity has enforced the specific execution of the contract, by enjoining the vendor against setting up such a trade within the prescribed limits, on the ground of the inadequacy of an action at law to give the party aggrieved a full and perfect remedy for such a breach of good faith. Thus, in the case of Har-

rison *v.* Goodman, 2 Madd. Ch. Rep. 198, the Vice-Chancellor, Sir Thomas Plumer, restrained a retiring partner, who had agreed on receiving a compensation for his interest in the good-will of the trade, not to commence a similar trade in the same vicinity. Again, in Williams *v.* Williams, 2 Swanst. Rep. 253, a coach-master had sold his share of the business to his partner, with an undertaking not to be concerned in any coach running from Reading to London, or prejudicial to the business which he had sold. On a bill filed by the purchaser, complaining that the defendant had lately begun to run a coach from Pangbourne, about six miles beyond Reading, to London, and from London to Pangbourne through Reading, Lord Eldon awarded an injunction restraining the defendant from running any coach from London to Reading and back, and back again from Reading to London.

In each of these cases, an action at law could have been sustained for the breach of the agreements; for, being covenants restraining the exercise of a trade in a particular place, and not covenants in general restraint of trade, they were valid. Still, however, equity entertained jurisdiction, because it was only by compelling a specific performance of the agreement that the plaintiffs in these cases could obtain complete and perfect justice. In principle, we can perceive no distinction between these cases and the present. In them, the vendor stipulated to leave the trade, in the places designated, in the undisturbed enjoyment of the purchaser of the good-will, and violated his contract by commencing the trade in the same place. In this case the purchaser, according to the true meaning of the contract, stipulated, on his non-compliance with the terms of payment, to surrender the appliances of the trade and the good-will to the vendor. And, instead of a *bonâ fide* compliance with his contract, according to its spirit, he sets up the same trade in the same place, and continues to supply the plaintiff's former customers. In effect taking away from the latter his trade as effectively as if he had possessed himself of it by a *bonâ fide* payment of the purchase-money, according to the terms of the contract. In such a case, although an action at law might lie, yet such an action is subject to all the objections of inadequacy and inefficiency, and the measure of damages therein would be equally uncertain and conjectural as in the cases cited, where equity has given relief, because of the want of fulness in the common-law remedies.

It is important that the principle on which the Court acts should not be misconceived. We are aware that a contract for the sale of

a good-will does not involve in itself any obligation on the vendor to forbear the exercise of the same trade : Shackle *v.* Baker, 14 Vesey, 463 ; Crutwell *v.* Lye, 17 Ib. 335 ; Kennedy *v.* Lee, 3 Merivale, 441. If the vendee of a good-will desires to protect himself from such a contingency, he should do so by express covenant or agreement. The basis of our action is, that according to the true intent and meaning of the contract between these parties, the defendant bound himself to deliver back the thing sold him in *statu quo*, if he should think fit to avail himself of the *locus pœnitentiæ* reserved when he made the bargain. In continuing to supply the plaintiff's original customers, he has actually retained the most valuable element of the thing sold to him ; and it is to compel the full and complete execution of the agreement according to its spirit, that the Court intervenes by its decree for specific performance.

It is ordered that an injunction be awarded to restrain the defendant, his servants and agents, from further furnishing camphine to such of the persons set forth in his answer as are, by the said answer, admitted to have been customers of the plaintiff at the time of the contract entered into between the parties for the sale of the horse, wagon, and list of customers set forth in the bill ; and that the defendant pay the costs.