## E. L. Wilkinson, Appellant, v. H. C. Colley.

*Contract—Penalty—Liquidated damages.*

Where a contract stipulates for a certain sum upon the breach of the contract, the intent of the parties in most cases, but not in all, will determine whether the sum stipulated is a penalty, or liquidated damages. Calling it a penalty is some evidence that it was so intended, but this is overcome if equity demands that it shall be treated as liquidated damages. In determining the equities of the particular case, the relation which the sum bears to the extent of the injury provided against will be considered, and where there are a number of covenants, and the sum named would be payable for a breach of any one of them, even the least, it is a penalty.

*Contract—Partial restraint of trade—Physician's practice—Liquidated damages—Penalty—Equity.*

Defendant, a physician, sold his practice to another physician, stipulating verbally that at the end of a certain time he would cease practicing. The vendee sold the practice to plaintiff, also a physician. Defendant, dis-

regarding his agreement, again began to practice. Defendant and plaintiff then entered into an agreement in writing whereby, in consideration of two hundred dollars, defendant covenanted that he would not practice in the locality for a period of ten years; that he would use his influence in favor of plaintiff; that he would not manufacture or put on sale any medical preparation during the ten years; and for the true performance of the covenants he bound himself " in the penal sum of four hundred dollars." Before the expiration of the ten years, defendant resumed his practice, and plaintiff filed a bill in equity for an injunction to restrain him from so doing. *Held*, (1) that the penal sum mentioned in the contract was a penalty, and not liquidated damages; (2) that it was not the intention of the parties that defendant was to have the privilege of practice on the payment to plaintiff of four hundred dollars; (3) that as there was an utter uncertainty in any calculation of damages from the breach of the covenants, and the measure of damages was largely conjectural, equity would intervene because of the inadequacy of the remedy at law; (4) that plaintiff was entitled to an injunction for the specific performance of the contract.

Argued April 10, 1894. Appeal, No. 359, Jan. T., 1894, by plaintiff, from decree of C. P. Luzerne Co., Feb. T., 1892, No. 2, dismissing bill in equity. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill to restrain defendant from practicing as physician within certain limits.

The case was referred to G. R. Bedford, Esq., as master.

From the record it appeared that, on Feb. 6, 1888, plaintiff and defendant entered into the following contract in writing and under seal:

" Whereas, each of the parties aforesaid are practicing physicians at Lehman township, and the vicinity adjacent thereto. The said H. G. Colley, in consideration of two hundred dollars, to him in hand paid by the said E. L. Wilkinson, that the said H. G. Colley shall and will not practice as a physician at Lehman or in that adjacent country within eight miles of Lehman Centre, for the term of ten years from the date hereof, except in case of accident or other cause of extreme necessity, then in such case said H. G. Colley may render assistance as a physician, but the compensation for such medical assistance is to go to the said E. L. Wilkinson. The said H. G. Colley further agrees to use his influence in favor of said E. L. Wilkinson, and, if necessary, to remain at Lehman for a period of three months from the date hereof in order to prevent opposi-

tion to said E. L. Wilkinson; the said H. G. Colley further agrees that he shall not manufacture or have put on sale any medical preparation or compound during the period named in this contract. And for the true performance of all and every the covenants and agreements aforesaid the said H. G. Colley bindeth himself in the penal sum of four hundred dollars firmly by these presents."

The circumstances under which the breach of the contract occurred appear by the opinion of the Supreme Court.

The master recommended that the bill should be dismissed. Exceptions to the master's report were dismissed by the court, and a decree entered dismissing the bill.

*Errors assigned* were dismissal of exceptions and entry of decree, quoting them.

*Q. A. Gates*, for appellant.—A physician may agree not to practice in a certain place, or in a certain place for a certain time, and the agreement will be binding: McClurg's Ap., 58 Pa. 51; Hall's Ap., 60 Pa. 458; Palmer v. Graham, 1 Pars. 476; Gillis v. Hall, 7 Phila. 422.

When a man has bound himself by his covenant, to do, or not to do, a certain thing, and has fixed a certain sum which he will pay upon the breach of his covenant, he is not absolved thereby from a specific performance of his agreement, and when the justice of the case requires such specific performance, equity will enforce it: Moore v. Colt, 127 Pa. 289; Keck v. Bieber, 148 Pa. 645.

Unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms can neither be added to nor subtracted from by parol evidence: Wodock v. Robinson, 148 Pa. 503; Irvin v. Irvin, 142 Pa. 271; Stull v. Thompson, 154 Pa. 43; Halberstadt v. Bannan, 149 Pa. 51; Clarke v. Allen, 132 Pa. 40; Zeigler v. McFarland, 147 Pa. 607; Martin v. Berens, 67 Pa. 459.

Under the answer in this case, the burden of proof comes upon defendant, as he sets up new matter not responsive to the bill; he is in the same situation as though he was in a court of equity as plaintiff seeking to have the written contract reformed: Story's Equity, § 15; 3 Greenl. Ev. § 290; Shea's Ap.,

121 Pa. 302; Smith v. Ewing, 151 Pa. 256; Bank v. Hartman, 147 Pa. 558; Bank v. Thompson, 144 Pa. 393.

The contract having been violated and damages demanded in the bill, it was the duty of the master to award to plaintiff, not only the injunction prayed for, but a judgment for damages sustained: Waters v. McElroy, 151 Pa. 549.

*W. H. McCartney*, for appellee.—In each case we must look at the language of the contract, the intention of the parties as gathered from its provisions, the subject of the contract and its surroundings, the ease or difficulty of measuring the breach in damages, and the sum stipulated, and from the whole gather the view which good conscience and equity ought to take of the case: Streeper v. Williams, 48 Pa. 450; Clements v. R. R., 132 Pa. 445; Kelso v. Reid, 145 Pa. 606; Keck v. Bieber, 148 Pa. 645; Bigony v. Tyson, 75 Pa. 157.

The plaintiff has an adequate remedy at law for the breach of the agreement: Graham v. Bickham, 4 Dal. 149; Shreve v. Brereton, 51 Pa. 175; Moore v. Colt, 127 Pa. 294; Clements v. R. R., 132 Pa. 445; Sedgwick on Damages, § 424; Clark's Ap., 62 Pa. 447; Gray v. R. R., 1 Grant, 412; Richards' Ap., 57 Pa. 105; Hilliard on Injunctions, 271; Adams's Equity, 485; 2 Story's Equity, § 925.

OPINION BY MR. JUSTICE DEAN, Oct. 1, 1894:

The bill in this case was for an injunction to restrain defendant from practicing as a physician within eight miles of Lehman Centre, in Luzerne county, for a period of ten years from 6th of February, 1888.

It appeared, from the bill, answer and testimony, that Dr. Colley, the defendant, had been a practicing physician at Lehman Centre from 1876 until 6th Feburary, 1888. Dr. Wilkinson, the plaintiff, was a younger man, and had commenced the study of medicine with Colley in spring of 1883, when only twenty-two years of age; afterwards, in March, 1885, he graduated from the College of Physicians and Surgeons at Baltimore. He then returned to Lehman Centre and formed a partnership with Colley in the practice of medicine. At the expiration of a year, the partnership was dissolved, and Wilkinson continued in the practice for himself, down to the 6th of Feb-

ruary, 1888 ; Colley also practicing for himself until July, 1886. Three years before, he had sold out his practice to one Dr. Hise, stipulating verbally that, at the end of three years, he would cease practicing. Hise's purchase included, besides Colley's practice, his property in Lehman Centre, valued at $1,525, and Hise for the same consideration sold to Wilkinson. Colley, at the end of the three years, stopped practicing about three months, then, disregarding his agreement with Hise, commenced again, and continued to February, 1888. On the 6th of that month, he and Wilkinson entered into another agreement, this time in writing, whereby, in consideration of two hundred dollars, Colley covenanted : 1. That he would not practice as a physician at Lehman Centre, or within eight miles thereof, for a period of ten years. 2. That he would use his influence in favor of Wilkinson, and remain at Lehman for three months, so as to prevent opposition. 3. That he would not manufacture or put on sale any medical preparation or compound during the ten years. 4. And for the true performance of the covenants of the contract, bound himself in the penal sum of four hundred dollars.

Wilkinson paid the full consideration, and Colley removed to Columbia county, but in less than four years returned to Lehman Centre, and commenced again to practice medicine there. Wilkinson notified him that he was violating his contract, and requested him to stop practice, but Colley persisted ; even sent cards to a large number of Wilkinson's patients, inviting their patronage. Thereupon Wilkinson filed this bill, averring the facts as stated, and praying for an injunction.

The answer of Colley admits the execution of the agreement, and the payment of the consideration ; admits that he resumed practice in Lehman, and the manufacture and sale of medicine ; but sets up a parol understanding or agreement with Wilkinson, that he was to return if he paid back the consideration, and averring the four hundred dollars designated as a penalty in the agreement, is liquidated damages, and further averring his readiness and ability to pay the same.

When the bill was filed, a preliminary injunction was awarded, which was afterwards, in an opinion filed by Presiding Judge WOODWARD, dissolved, and the case sent for hearing to a master, who, on the authority of the opinion already filed, dissolv-

ing the injunction, reported against the plaintiff; on exceptions being filed, they were overruled by the court, and the bill dismissed at costs of plaintiff. From this decree, plaintiff appeals.

The decree of the learned judge of the court below is based upon two conclusions : 1. That the penal sum of four hundred dollars in the contract, is to be treated as damages liquidated by the parties. 2. That the plaintiff has an adequate remedy at law for the breach of the contract. It follows that if the first conclusion, that the penalty of $400 is liquidated damages, be correct, the second is also correct. For all difficulty in liquidating damages, which from the very nature of the contract is otherwise great or impossible, is removed by the express stipulation of the parties that the damages shall be fixed at $400. The remedy at law for the recovery of a sum certain is complete and adequate.

The question then recurs, was it the intention of the parties that Colley was not to practice again for ten years, or that he was to have the privilege of practicing on payment to Wilkinson of $400 ?

It is said by AGNEW, J., in delivering the opinion of the Court in Streeper v. Williams, 48 Pa. 450, where the contention was as to whether the words " forfeit the sum of $500, in case either party fail to comply with the terms of this agreement," was a penalty or liquidated damages, that: " Upon no question have courts doubted and differed more. It is unnecessary to examine the numerous authorities in detail, for they are neither uniform nor consistent. No definite rule to determine the question is furnished by them, each being determined more in direct reference to its own facts than to any general rule. In the earlier cases, the courts gave more weight to the language of the clause designating the sum as a penalty or liquidated damages. The modern authorities attach greater importance to the meaning and intention of the parties. Yet the intention is not all controlling, for in some cases the subject-matter and surroundings of the contract will control the intention, where equity absolutely demands it."

An examination of the cases in this state since Streeper v. Williams, decided thirty years ago, only confirms the correctness of the statement, made by Justice AGNEW, that each case is determined by its own facts; no definite rule to determine

whether the stipulated sum is a penalty or liquidated damages, is or can be laid down, without, in many cases, disregarding the principles on which equity is administered.

In Moore v. Colt, 127 Pa. 289, the contract was the sale of a stage line, with a stipulation that the vendor should not engage in the business. The words were: "And each party is hereby held and fully bound in the sum of $300 for the faithful fulfilment of the above contract." This was held a penalty, the court saying, the defendant has no equity that language which technically provides a penalty shall be treated as liquidated damages. That, where the parties call it a penalty, it will be so construed, unless equity demands otherwise.

In March v. Allabaugh, 103 Pa. 335, Justice CLARK says, in delivering the opinion of the court, we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, and the ease or difficulty of measuring a breach in damages.

In Keck v. Beiber, 148 Pa. 645, Justice MITCHELL, after approving the language of Justice AGNEW in Streeper v. Williams, says, the presumption is that a lump sum named by the parties to a contract is a penalty rather than liquidated damages; the name by which it is called is of slight weight, the controlling elements being the intent of the parties and the special circumstances of the case. Where there are numerous covenants of the most varied kinds and importance, and yet the sum named is payable for a breach of any, even the least, it is a penalty.

The sum of the authorities in our own state is, that the intent of the parties in most cases, but not in all, will determine whether the sum stipulated is a penalty or liquidated damages. Calling it a penalty is some evidence that it was so intended, but this is overcome, if equity demands it shall be treated as liquidated damages. And that, in determining the equities of the particular case, the relation which the sum bears to the extent of the injury provided against, will be considered. That where there are a number of covenants, and the sum named would be payable for a breach of any one of them, even the least, it is a penalty.

Take now the circumstances under which this agreement was

made, and the terms of it, to discover the intent. It is called a penalty, which is some evidence, though slight, that it was so intended. Colley, by the death of his father, found it necessary to remove and locate in Columbia county. In consideration of $200 he covenants not to practice in Lehman Centre for ten years. He was a physician forty years of age; his practice was well established and valuable to another physician, especially to a young man, who had graduated but a short time before; it was of but small value to Colley, for he must abandon it, and take up his residence in another county, even if he gets nothing for it. Its sole value to the purchaser, however, depends on Colley remaining away, in which event it is of very great value. It is of no value at all, if Colley soon returns. Is it reasonable to suppose, that Wilkinson intended Colley should have the privilege of resuming practice on payment to him of a sum equal to $40 per year, about the value of the patronage of a single patient? Colley admits, in his testimony, that many of his old patients have come back to him since his return, and he was there less than a year before testifying. The sum is so out of proportion to the whole damages which Wilkinson would sustain by a breach of it, that it seems to us improbable that it was intended as liquidated damages by him. But, change the action to one for damages, and suppose that Wilkinson had brought suit against Colley for selling a single phial of medicine for a dime, which Colley covenanted not to do; would Colley have submitted to a judgment of $400 in liquidated damages for the breach, or would he have invoked equity to relieve him from the gross extravagance and hardship of the full penalty, wholly out of proportion to the nature and extent of the injury? Or, if he had returned four days before the end of the ten years, and commenced practice, would the $400, or at the rate of $100 per day, have been the liquidated damages for the violation of the covenant? Yet the sum named here is payable for the breach of any one, even the least of these covenants.

There is nothing in the nature of the contract or the circumstances attending it which points to an intent of the parties to treat this sum other than what they call it, a penalty.

While there is much variance in the authorities on this question, the equities of the particular case often determining the

construction put upon the language, nevertheless the defend-
ant has shown no equity which should move a court in his fa-
vor.   He first sold out his property and practice for a large sum
to Dr. Hise, and Wilkinson bought from Hise.   Then defend-
ant resumed practice ; then again, by the most explicit agree-
ment in writing, he sold to Wilkinson, and deliberately violated
his covenants, to the manifest injury of Wilkinson, and, on his
own showing, he did this because it paid him better to break
his contract than to keep it.   The equities of the case, there-
fore, are all with the plaintiff.   We hold that the $400 stipu-
lated here is a penalty only.   The contradictory parol evidence
is without significance, in view of the plain terms of the con-
tract, and the circumstances surrounding the parties when they
entered into it ; we do not attempt to reconcile it, because the
contract itself is not ambiguous, and the circumstances under
which it was made are undisputed; these are the controlling
facts in settling its interpretation.

As to the second proposition held by the learned judge, that
plaintiff has an adequate remedy at law, his decision is ground-
ed mainly on the interpretation that the contract stipulates for
liquidated damages.   As we do not concur with him in this
view, the question remains, whether, treating it as a penalty,
in equity the plaintiff is entitled to a specific performance of
the contract.   That plaintiff could maintain an action at law
for damages, for breach of the contract, there is no doubt.   But
it is a well settled rule, that although the action at law will lie,
yet if there is an utter uncertainty in any calculation of dam-
ages from the breach of the covenants, and the measure of dam-
ages is largely conjectural, equity will intervene because of the
inadequacy of the remedy.   The plaintiff claimed damages to
the amount of one hundred dollars per month, up to the hear-
ing of the case before the master, and offered evidence to es-
tablish this claim.   But there was no full hearing on the merits
of this branch of the case, nor any finding of fact by the mas-
ter, and we pass no opinion on this evidence.   It remains open,
for further proceedings in the court below, to determine the
amount of damages sustained by plaintiff, between the return
of defendant to Lehman Centre and the issuing of this injunc-
tion.   We only determine that from the very nature of this
contract an action at law is a wholly inadequate remedy for its

persistent violation during the ten years, and therefore equity will specifically enforce performance of it by injunction : Palmer v. Graham, 1 Parsons, 476.

Therefore the decree of the court below dismissing the bill is reversed at costs of appellee, and the bill reinstated ; it is further ordered that an injunction issue directed to defendant, restraining him from practicing as a physician at Lehman Centre, and within eight miles thereof, until the 6th day of February, 1898, and from manufacturing or putting on sale any medical preparation during the same time.