**Franchise Realty Interstate Corp. v.
State College Shopping Center, Inc.**

*Richard L. Campbell, Miller, Kistler, Lee & Campbell*, for plaintiff.

*Arthur C. Dale* and *Charles R. Whitehill*, for defendant.

CAMPBELL, P. J., July 3, 1969.—

## I. STATEMENT OF PLEADINGS AND ISSUES RAISED

A complaint in equity was filed seeking the following relief:

(a) To enjoin defendant from the use of a partially constructed building until distinctive architectural features were removed.

(b) Ordering defendant to remove the distinctive arches of the building.

(c) To enjoin defendant from any use or disposition of furnished plans and specifications.

(d) Ordering defendant to return the plans and specifications.

(e) To enter judgment for liquidated damages in the amount of $15,000.

Defendant filed a reply denying breach of lease agreement and averring new matter. A reply to new matter was then filed by plaintiff.

The specific issues raised are as follows: (1) whether or not defendant is in default under a lease agreement, (2) whether or not after termination of the agreement an accord and satisfaction or a novation was effected, and (3) the validity and applicability of a clause providing for liquidated damages.

## II. FINDINGS OF FACT

1. Plaintiff and defendant entered into a lease agreement dated August 3, 1961, in which defendant agreed to construct a "McDonald's" on its land and thereafter to lease the same to plaintiff for a term of 20 years.

2. Said written lease provided in paragraph 7 thereof as follows:

"Lessor expressly agrees that he will commence construction within 90 days after the date of the execution of this lease and will diligently proceed with the construction of the building and improvements as aforesaid and that the same will be completed not later than May 1st, 1962, and so certified by the architect, if any, employed in connection with said construction or so evidenced by the proper municipal authorities by the granting of a certificate of occupancy. It is further agreed, anything to the contrary notwithstanding, that should Lessor fail to commence construction or to complete the same within the limitations in this paragraph above set forth then Lessee shall have the right and privilege to declare this lease null and void and all monies paid by the Lessee to Lessor shall be returned to the Lessee. Lessor acknowledges that Les-

see's damages from a failure by Lessor so to construct and complete said improvements are difficult of ascertainment; that said damages include not only the loss of the use of the premises but also expenses which Lessee will have incurred and damages for which Lessee may be liable to third persons in connection with subleasing of the premises, arrangements for installation of fixtures and equipment and the financing thereof and loss of profits from the deprivation of the future use of the premises. Accordingly, Lessor agrees, as liquidated damages and not as a penalty, to pay to Lessee, in the event Lessee shall elect to declare this lease null and void as aforesaid, the sum of $15,000.00.

"*In the event that construction cannot be started or the improvements completed within the time limitations hereinbefore mentioned due to the inability of the Lessor to procure labor, materials therefor, strikes, acts of God, unusual weather, or governmental restrictions then the time shall be extended accordingly."

3. Defendant defaulted under said lease agreement in the following respects:

(a) Defendant failed to complete the building of the structure within the time specified.

(b) Defendant failed to comply with the plans and specifications furnished by plaintiff in proceeding with construction.

4. Defendant's default as set forth in finding of fact 3 was not justified nor excused by the plaintiff. Plaintiff declared the lease null and void and so notified defendant on November 15, 1962.

5. Plaintiff was at all times ready and able to perform under its lease contract.

6. That on or about October 5, 1963, plaintiff offered to accept a settlement of $3,200 to be paid by defendant within a specified time. Defendant paid $200 but could not or did not complete settlement in accordance with the offer.

7. That defendant failed to pay any additional amount and upon default plaintiff rescinded its offer of compromise.

8. Defendant removed the partially constructed building, removed the distinctive arches attached thereto and returned all copies of the plans and specifications to plaintiff.

9. That the damages suffered by the plaintiff are incapable of being accurately determined but plaintiff did lose a location fee of $2,500 and the profit on base rent with 40 percent markup representing $3,600 a year, plus 7 percent of anticipated profits had the unit been in operation upon the agreed date.

## III. DISCUSSION

### Jurisdiction

An examination of the prayer of plaintiff's complaint convinces the court that equity has jurisdiction. Since the institution of this suit, defendant has complied with a number of plaintiff's requests, thereby rendering these matters moot. There do remain, however, two matters which require our consideration: first, the request of plaintiff to enjoin defendant from any future use of the original plans and specifications furnished defendant; and secondly, the validity and applicability of a liquidated damage clause is involved. We believe that both of these problems are equitable in nature and should there be any doubt, we still hold that when equity has once assumed jurisdiction, it may retain it for all purposes to do substantial justice between the parties: Buswell v. Buswell, 377 Pa. 487; 105 A.2d 608 (1954).

### Compromise Settlement

Extensive negotiations were conducted between the parties or their counsel in an effort to settle the litigation. It extended over a period of more than two

years beginning July 11, 1963, and ending September 28, 1965. Ten pages of testimony are devoted entirely to a resume of proposals and counter proposals. We feel safe in arriving at the general conclusion that plaintiff was willing to accept $3,000, representing the approximate out of pocket loss at the beginning of the negotiating period, but that defendant did not have the available funds and was insisting upon a series of deferred payments which was unacceptable to plaintiff. We find nowhere in the record any complete meeting of the minds of the parties of a definite settlement agreement, even though defendant made two $100 payments to plaintiff during the negotiations. Under these circumstances we can find no binding agreement of settlement.

### Accord and Satisfaction

The classical definition of an accord is that it is a contract between a creditor and a debtor for the settlement of a claim by some performance other than that which was originally contemplated. There is little doubt in this case that plaintiff was satisfied to settle the litigation upon the payment of the original stipulated amount of $3,000. This offer was made known to defendant. It is likewise fair, we believe, to find that this settlement figure was acceptable to defendant but that the time, amounts and manner of payment were never agreed upon by both parties and of course never completed. Under no circumstances was there a satisfaction. Pennsylvania has always adhered to the principle that an accord without a satisfaction is ineffectual to change the rights and liabilities of the parties. An accord is regarded as merely a tentative proposal of settlement, which is not binding on either of the parties until the proposal is executed and consummated: Duryea v. Long, 191

Pa. Superior Ct. 511, 159 A.2d 259 (1960); Konqueror Building and Loan Association v. G. R. Kinney Co., Inc., 315 Pa. 318, 172 A. 719 (1934); Sum. Pa. Jur. Contracts, §136.

We therefore hold that there was no accord and satisfaction in this case.

## Novation

Having held above that there was an offer made by plaintiff which defendant agreed to and would have liked to accept but was unable to do so, because of meeting the requirements of payment, then under no circumstances could there have existed a novation. Certainly the parties did not contemplate that a naked promise of defendant and not a performance would be accepted in satisfaction of the original obligation. We hold that the parties are bound by their original undertaking, to wit, the agreement of August 3, 1961.

## Liquidated Damages

In determining whether a stipulated sum in a contract is a penalty or liquidated damages, consideration must be given to the language of the contract, the intention of the parties as gathered from all its provisions, the subject of the contract and its surroundings, the ease or difficulty of measuring the breach in damages, and the sum stipulated: Philadelphia Dairy Products Company, Inc. v. Polin, 147 Pa. Superior Ct. 26 (1941); York v. York Railways Company, 229 Pa. 236 (1910).

We have set forth in the second finding of fact the complete liquidated damage clause contained in the contract. The parties acknowledge the difficulty of ascertainment of damages, that the damages include not only the loss of the use of the premises but expenses which the lessee will have incurred and its

liability to third persons in connection with leasing of the premises; that expenses would be incurred in the installation of furniture and equipment and the financing thereof and the loss of profits from the deprivation of the future use of the premises. The parties also specifically agree that the amount of $15,000 shall be considered as liquidated damages and not as a penalty. We therefore believe that it was the intention of the parties to consider this a valid predetermination of the damages in the event of a breach.

In order that such a stipulation may be considered as a provision for liquidated damages and enforced by the court, the amount stated must be reasonable and not disproportionate to the amount of the probable damages: E. L. Wilkinson v. H. C. Colley, 164 Pa. 35, 30 Atl. 286 (1894).

Equity may preclude the injured party from recovering more than a just compensation: Kunkel and Jordan v. James Wherry, 189 Pa. 198 (1899).

Not considering any percentage of anticipated profits, it would appear that plaintiff would have been initially entitled to a $2,500 location fee and a profit on base rent with a 40 percent mark-up amounting to $3,600 a year. In a three year period plaintiff would have received from these two sources $13,300. Subtracting from this plaintiff's out of pocket expenses, its loss would be approximately $10,-000. Of course, the lease was for a longer period than three years but we feel that this period would provide ample time within which the plaintiff could, to a great degree, mitigate its damages. Also termination occurred sufficiently far in advance to obviate the necessity of incurring expenses in the installation of furniture and equipment and the financing thereof.

In view of the fact that we are acting as a court of equity and notwithstanding the fact that we have held the clause a valid provision for liquidated damages, we determine and set plaintiff's damages at the amount of $10,000 with interest from the date of this decree.

## IV. CONCLUSION OF LAW

We therefore make the following conclusion of law:

1. Plaintiff is entitled to a decree enjoining defendant from any future use of furnished plans and specifications and to a judgment for damages in the amount of $10,000.

## V. DECREE NISI

And now, to wit, July 3, 1969, it is hereby adjudicated and decreed as follows:

1. That defendant, State College Shopping Center, Inc., be and is hereby enjoined from any future use of plans and specifications furnished to it by Franchise Realty Interstate Corporation pursuant to agreement entered into between the parties dated August 3, 1961.

2. The judgment is hereby entered in the amount of $10,000 as damages for the breach of the agreement between the parties dated August 3, 1961, with interest from this date.

3. That the prothonotary of Centre County is directed to file this opinion and enter the foregoing decree nisi and give notice to the parties or to counsel of record as provided by the rules of equity practice in Pennsylvania and unless exceptions are filed within 20 days after said notice, this decree nisi shall be entered upon praecipe as a final decree by the prothonotary.