# Hall's Appeal.

1. An agreement in restraint of trade should be established by clear and satisfactory evidence.

2. There should be no doubt as to its terms or the consideration on which it is founded.

3. A writing must speak for itself, unless it be shown that something was omitted through fraud or mistake.

4. Good faith requires of a party who has sold the good-will of his business, that he should do nothing which tends to deprive the purchaser of its benefits and advantages.

5. The vendor has no right to hold himself out by advertisements, &c., as having removed from his former place of business to another place where he will continue his former business.

February 3d 1869. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Philadelphia*: In Equity: No. 325, to January Term 1868.

In the court below this was a bill by John C. Rulon against John M. Hall, averring that for the consideration of $3000 paid by the plaintiff, the defendant, on the 23d of November 1863, sold to the plaintiff the stock and good-will of an undertaking establishment, No. 1313 Vine street, Philadelphia, and agreed to retire from the business, and not go into it again in Philadelphia;

[Hall's Appeal.]

that the stock was not worth more than $1500, and the remaining $1500 was paid for the good-will; that the defendant had resumed business in March 1866, and was carrying it on in the immediate vicinity of the original place.

The answer denied that the defendant had agreed not to resume business; averred that the stock was worth $3000, with other allegations not material to state here.

The case was heard below on bill, answer and proofs, without having been referred to a master, and the court decreed:—

"That a perpetual injunction be decreed against the defendant, restraining the said defendant, John M. Hall, from conducting or carrying on his business of undertaking, or as an undertaker, at No. 1539 Vine street, or at any other place within the limits of the city of Philadelphia, according to the terms of his agreement with the plaintiff, John C. Rulon; and that the said defendant, John M. Hall, pay the costs of this suit."

The defendant appealed to the Supreme Court. When the case came up there for hearing it was referred to Samuel Dickson as master, "to report on the evidence, with a decree or otherwise, as the equity of the case shall require, and as to costs."

From the report of the master it appeared that there was an agreement in writing, dated November 23d 1863, the material points of which are as follows:—

"Know all men by these presents, that I, John M. Hall, of Philadelphia, for and in consideration of the sum of $3000 * * paid by John Charles Rulon, of the second part * * do grant and convey unto the said party of the second part the good-will of my undertaking business, with the contents of shop in the rear of 1313 Vine street, and fronting on Pearl street; all the contents of third story, consisting of mahogany and walnut coffins, &c. Also the furniture of office 1313 Vine street, consisting of book-case, &c. Also, bill of improvement on property 1313 Vine street to be deducted from the rent when the lease expires. Together with lease on property 1313 Vine street, expiring June 1st 1865," &c.

After this paragraph, and before the attesting clause, there is a blank of seven lines in the written paper.

Also the evidence of Joseph R. Black, a witness for the plaintiff, who testified:—

"I was present at the interview between the parties in November 1863; I was present when the arrangement was made between Mr. Rulon and Mr. Hall. Mr. Rulon proposed to Mr. Hall to draw up an article of agreement that he, Mr. Hall, should not go into business again. Mr. Hall replied that it was unnecessary. 'I have sold out to you; I shall never go into business again in Philadelphia; that you need give yourself no uneasiness about.' He said his health was poor, and was glad to get out of the busi-

ness. No one present but Mr. Hall, Mr. Rulon and myself. There was disposed of that time the entire stock of the undertaking business. Mr. Hall reserved for himself all the horses and carriages, except one horse and one wagon. Mr. Hall said he was going into the livery business."

And of Alexander Black, who testified: "I paid the money through Mr. Rulon to Mr. Hall; I saw Mr. Rulon pay the money to Mr. Hall; I saw them both together in Mr. Hall's office, No. 1313 Vine street, about Christmas of 1863. I suggested to Mr. Hall that Charles was rather young and inexperienced in the undertaking business. Mr. Hall said he was capable of driving the whole business; I suggested the idea that he, Mr. Hall, must assist him, lending his influence.

"Mr. Hall said he would do all he could for him as long as he, Mr. Hall, remained in the livery business. I then stated, I would have been better satisfied if there had been an article drawn up between them, that Mr. Hall was not to go into that business again. Mr. Hall said he thought I need have no fears on that point, for his health would not permit, if he was disposed to. He said if he got out of the livery he talked of going West in the lumber business; he said he would not go into the undertaking business in Philadelphia if he should come back; so I understood him; I am certain that he said so. I then passed the money to Mr. Rulon. I told him to count it and pay it over to Mr. Hall. I saw Mr. Rulon pay it to Mr. Hall."

There was evidence that the defendant Hall afterwards went into the same business at 1539 Vine street, and had advertisements published in Philadelphia newspapers in the following form:—

"J. M. Hall, general furnishing undertaker, late of No. 1313 Vine street, has removed to 1539 Vine street, where he will continue his former business. Strict personal attention at all hours."

John E. Balderston, for the defendant, testified:

"To the best of my knowledge, I think J. M. Hall resumed business in Philadelphia sometime in April or May, 1866; the first I knew of his having resumed business was, I met Mr. Rulon and he told me that Mr. Hall was about starting business again; we had some little conversation about it, to the best of my knowledge; I asked Mr. Rulon if he could not prevent Mr. Hall from resuming business again; to the best of my memory, Mr. Rulon said he did not know whether he could stop him or not, as he had no special agreement against his, Mr. Hall's, not resuming business; so I understood it; I remarked I thought it was a mistake if he had not a special agreement that he, Mr. Hall, should never resume the undertaking business in this city.

"Mr. Rulon said that he was furnishing Mr. Hall with coffins and the use of his wagon; I understood that Mr. Hall was getting

[Hall's Appeal.]

his work done by Mr. Rulon; I think I saw them several times together after Mr. Hall resumed business; I saw them at Mr. Rulon's once, and in the wagon together at my stable."

Also, Samuel Fogg, who testified: "I had a conversation with Mr. Rulon after Mr. Hall resumed; I told him, Mr. Rulon, that I thought he had made a grand mistake in assisting Mr. Hall to resume business, by furnishing him with coffins and wagons, if there was no written contract that Mr. Hall should not go into business again; he said it was a mistake; I had seen John Hall at Mr. Rulon's ordering things when I was there for the same purpose, and that was why I knew Mr. Rulon was furnishing Mr. Hall."

The Master amongst other things reported, as his conclusions:

"1. By the terms of the sale, November 23d 1863, the defendant, Hall, agreed not to resume the undertaking business in the city of Philadelphia. This was a term of the contract between the parties, and was omitted from the bill of sale, through the fraud of Hall.

"2. This agreement was upon a sufficient consideration, and is in itself reasonable.

"3. Hall's resumption of business in the city of Philadelphia was under such circumstances and in such a manner as should be restrained by injunction, as a violation of his contract for the sale of the good-will, in case the court should be of opinion that the agreement not to resume is not proven.

"4. His resumption of the business was not with the consent of the plaintiff, nor was there anything in the conduct or declaration of the plaintiff to preclude him from now enforcing his rights.

"5. There is nothing in the case to vary the ordinary rule as to costs, which should be paid by the defendant.

"The Master reports that this is a proper case for equitable interference, and, as the form of the decree in the court below seems to be unexceptionable, recommends that the appeal be dismissed, and the decree of the Court of Common Pleas be affirmed, at the costs of the appellant."

*G. L. Crawford* (with whom was *J. W. Latta*), for the appellant.—The sale of good-will carries no obligation not to carry on the same trade in the vicinity: Cruttwell *v.* Lye, 17 Ves. 336; Lindley on Partnership 10, 705; 2 Phillips on Evidence 665, n. 494; Mitchell *v.* Reynolds, 1 Peere Wms. 181; 1 Smith's L. C. 171.

*A. R. Cutler*, for appellee.—Contracts in restraint of trade are good as to particular localities when reasonable: Nobles *v.* Bates, 7 Cow. 307; Mitchell *v.* Reynolds, *supra;* Bragg *v.* Stanner, Palm.

172; Clerk *v.* Taylor, 3 Levinz 343; Mallan *v.* May, 11 M. & W. 665.  A verbal promise is binding, courts of equity decreeing specific performance of bonâ fide contracts: 2 Story's Eq. Juris. 34; Halsey *v.* Grant, 13 Ves. 76; Alley *v.* Deschamps, Id. 228; Cud *v.* Rutter, 1 Peere Wms. 570; Davis *v.* Hone, 2 Sch. & Lefroy 347; Lennon *v.* Napper, Id. 684; 3 Wooddeson, § 466; 1 Fonbl. Eq. B. 1, ch. 3, § 8, n. *e*; Taylor *v.* Berch, 1 Ves. Sr. 297.  Where an agreement is intended to be reduced to writing, and it is prevented by fraud, equity will decree specific performance: Newland on Contracts, ch. 10, pp. 179–197; Montacute *v.* Maxwell, 1 Peere Wms. 618; 1 Story's Eq. J., § 152–154. Oral testimony in aid of insufficient evidence is admissible: Eden *v.* Blake, 13 M. & W. 618; Allen *v.* Pink, 4 Id. 140.  Custom as to the sale of good-will may be shown: Addison on Contracts 851; McClurg's Appeal, 8 P. F. Smith 51.  Equity may enforce implied contracts, arising from encouragement: Cruttwell *v.* Lye, *supra;* Hitchcock *v.* Coker, 6 Ad. & Ell. 438; Harrison *v.* Gardner, 2 Madd. Ch. R. 198.

The opinion of the court was delivered, July 6th 1869, by

WILLIAMS, J.—We have no doubt of the validity of such a contract, as is alleged in the bill, if founded on a sufficient consideration, or of the power of the court to restrain its breach by injunction.  Our doubt in this case arises from the insufficiency of the proof to establish the existence of the alleged agreement. It cannot be inferred from the sale of the good-will of the business, and it is expressly denied in the answer.  The sealed agreement between the parties, given in evidence by the plaintiff, contains no stipulation or covenant on the part of the defendant, either to retire from the business or not to resume it again in the city of Philadelphia; and in this respect it fully corroborates and sustains the answer.  Nor is there any sufficient evidence that such a stipulation was omitted through the fraud of the defendant, or the mistake of the parties.  The only evidence from which such an inference could possibly arise is the testimony of Joseph R. and Alexander Black, but neither of these witnesses proves that it was one of the express terms and conditions of the sale, that the defendant was to retire from the business, and not to resume it again in the city of Philadelphia.  On the contrary, their testimony amounts to no more than the declaration of the defendant's intention not to go into the business again in Philadelphia on account of the state of his health, which had compelled him to give it up. The fair inference from their testimony in connection with the blank left in the agreement is, that while the defendant declared it to be his intention and purpose not to resume the business, he was unwilling and refused to bind himself by a positive stipula-

tion not to resume it at any time thereafter. This inference is greatly strengthened by the plaintiff's admissions to Balderston and Fogg, after the defendant had resumed the business, and by the fact that he furnished him, without remonstrance or objection, goods to carry on the business for two or three months after he had resumed it. As the alleged agreement is in restraint of trade, its existence should be established by clear and satisfactory evidence in order to justify the court in restraining its breach by injunction. There should be no doubt or uncertainty in regard to its terms, or the consideration upon which it was founded. Here the parties have put their contract in writing, and it must be allowed to speak for itself, unless it is clearly shown that the stipulation in question was omitted through fraud or mistake. Under the proofs in this case, a court of equity would not reform the agreement as written and sealed by the parties; and if they had not reduced their contract to writing, the evidence would be wholly insufficient to establish it, as alleged by the plaintiff.

But there is more of substance in the complaint as to the manner in which the defendant is carrying on the business of an undertaker. He sold the good-will of his business to the plaintiff for a valuable consideration, and good faith requires that he should do nothing which directly tends to deprive him of its benefits and advantages. The bill charges, and the evidence shows, that he is holding himself out to the public by advertisements, as having removed from his former place of business, No. 1313 Vine street, to his present place of business, No. 1539 Vine street, where he will continue his former business. It is clear that he had no right to hold himself out as continuing the business which he sold to the plaintiff, or as carrying on his former business at another place to which he has removed: Hogg v. Kirby, 8 Ves. Ch. Rep. 214; Chinton v. Douglas, 1 John. Eng. Ch. Rep. 174. While, therefore, the appellant is entitled to have the decree of the court below, restraining him from conducting or carrying on his business of undertaking, &c., within the limits of the city of Philadelphia, reversed, it must be so modified, as to restrain him from holding himself out to the public by advertisement or otherwise as continuing his former business, or as carrying it on at another place.

Let the decree be drawn up under the rule.