## Hanlon v. Morrissey

*William C. Fulmer*, for plaintiff.

*T. McKeen Chidsey* and *Francis Logan*, for defendant.

FRACK, J., May 28, 1946.—Dr. C. R. Hanlon filed a bill in equity against Dr. E. James Morrissey for injunctive relief on the ground that defendant violated and is violating a restrictive covenant not to practice in Northampton or Lehigh Counties as a physician, surgeon or medical practitioner, except as chief surgeon at the Bethlehem plant of Bethlehem Steel Corporation. The covenant was included in an agreement dated February 1, 1941, wherein defendant, a practicing physician specializing in orthopedic surgery, sold to plaintiff his office and medical equipment, fixtures, supplies, practice and good will for $5,880. For five years and two months defendant maintained no office for the practice of medicine or surgery and did not practice medicine or surgery in any capacity except as chief surgeon at the Bethlehem plant of Bethlehem Steel Corporation. On April 4, 1946, defendant again opened

his own professional office, which he admits is for the purpose of practicing orthopedic surgery, and is in competition with the practice of plaintiff who also specializes in orthopedic surgery. Defendant admits all allegations in plaintiff's bill of complaint, subject to certain legal defenses fully set forth in our discussion, so that the covenant is averred to be unenforcible.

From the admissions in the pleadings and from the testimony, we make the following

### Findings of fact

1. Plaintiff is a duly licensed medical practitioner, specializes in orthopedic surgery, is certified by the American Medical Association as an orthopedic surgeon, and has engaged in the practice of his profession at Room 405 Bethlehem Trust Building, Bethlehem, Pa., since February 1, 1941.

2. Defendant is a medical practitioner duly licensed to practice throughout the Commonwealth of Pennsylvania, and duly licensed by the National Board of Medical Examiners qualifying him to practice in all States of the United States, is certified by the American Medical Association as an orthopedic surgeon, and specializes in orthopedic surgery.

3. Prior to February 1, 1941, defendant practiced medicine as an orthopedic surgeon at Room 405 Bethlehem Trust Building, Bethlehem, Pa.

4. Some time prior to February 1, 1941, defendant was appointed chief surgeon, Bethlehem plant, of Bethlehem Steel Corporation, effective February 1, 1941.

5. Prior to February 1, 1941, defendant contacted plaintiff, who was then residing in and practicing his profession, in Wilkes-Barre, Pa., with the result that plaintiff visited defendant's office, at which time defendant offered to sell his office and medical equipment, fixtures and supplies for $880 and his practice and

good will for $5,000; upon acceptance by plaintiff of defendant's offer, defendant caused to be prepared by his then counsel a written contract which was duly executed by the parties on February 1, 1941. There is no issue involved in this case that the contract was not a free and voluntary act of defendant and that defendant did not understand its terms.

6. Said agreement dated February 1, 1941, recites that defendant transferred his office and medical equipment, fixtures and supplies to plaintiff by bill of sale bearing even date; and the agreement provides that defendant "sells and assigns" to plaintiff his practice as an orthopedic surgeon and the good will thereof "to have and to hold the same unto the party of the second part (plaintiff) absolutely" with the further covenant that "the party of the first part (defendant) hereby covenants with the party of the second part that he will introduce him to all the patients of the party of the first part and do all in his power to procure the benefit of the said practice to the party of the second part and to insure his success therein and that the party of the first part will not at any time hereafter in Northampton or Lehigh Counties practice as a physician, surgeon or medical practitioner in any capacity or attend to any of his past or present patients except as Chief Surgeon, Bethlehem plant of Bethlehem Steel Corporation". The consideration of $5,880 was agreed to be payable "in six yearly payments as follows: $1,000. to be paid at the expiration of the second, third, fourth, fifth and sixth years from date hereof, and $880. at the expiration of the seventh year from date hereof without interest . . .".

7. At the time defendant discussed with plaintiff the proposed sale of his practice and the good will thereof and at the time of making the agreement for the sale thereof together with his office and medical equipment, fixtures and supplies, he advised plaintiff that

his practice covered Lehigh and Northampton Counties; that these counties should be incorporated in the contract because that was the area over which he did business; he was at the time consulting orthopedic surgeon at Easton Hospital, Easton, Pa., was on the adjunct staff at St. Luke's Hospital, Bethlehem, Pa., was visiting surgeon at the Allentown General Hospital and Sacred Heart Hospital, both at Allentown, Pa., and did orthopedic surgery at St. Luke's Hospital, the Easton Hospital, Sacred Heart and other Allentown hospitals and he treated at said hospitals and at his office patients from the surrounding territory consisting of Lehigh and Northampton Counties.

8. Defendant on February 1, 1941, assumed his duties as chief surgeon, Bethlehem plant of Bethlehem Steel Corporation, and plaintiff at the same time, for the first time, commenced to practice his profession in Lehigh and Northampton Counties, and is presently so engaged, with his office at Room 405 Bethlehem Trust Building, Bethlehem, Pa.

9. Plaintiff is connected in the same or similar capacity with all the hospitals with which defendant had been connected as aforesaid, follows orthopedic surgery, performs operations at the same hospitals, and treats patients from the overall area of Lehigh and Northampton Counties, with his patients coming from every city, and practically all boroughs and townships located in each of said counties. Plaintiff renders throughout the restricted area the same type of services defendant had formerly rendered throughout the same area.

10. Plaintiff performed all the terms, covenants and conditions required by him to be performed in the aforesaid agreement and defendant sets up no defense in any breach on the part of plaintiff.

11. Subsequent to February 1, 1941, defendant performed all the terms, covenants and conditions of said

agreement required of him to be performed, until April 4, 1946, at which time defendant opened an office for the practice of orthopedic surgery at New and Market Streets, Bethlehem, Northampton County, Pa., at which office defendant has actively practiced orthopedic surgery since said date; and defendant has since April 4, 1946, carried on the practice of orthopedic surgery within the counties of Lehigh and Northampton in the Commonwealth of Pennsylvania.

12. Defendant discontinued his duties as chief surgeon, Bethlehem plant of Bethlehem Steel Corporation on April 20, 1946, but he is still employed as a member of the medical staff at the medical department of the Bethlehem plant by said corporation.

13. Although plaintiff and defendant orthopedic surgeons are certified or approved by the American Medical Association as specialists, orthopedic surgery is performed by general surgeons and general practitioners in the area herein involved. Any general practitioner may practice orthopedics and perform orthopedic surgery.

14. Subsequent to plaintiff's arrival in Bethlehem to assume the practice of defendant, there have been available to the general public in both counties in need of orthopedic treatment the services of those general surgeons and doctors who perform orthopedic surgery and who practice orthopedics and of plaintiff specialist; and to that portion of the public in both counties employed at the Bethlehem plant of the Bethlehem Steel Corporation, the services of defendant, as permitted by the terms of the contract.

15. Plaintiff's office is located in the approximate center of the two farthest points of the two county area; defendant's office prior to February 1, 1941, was, and since April 4, 1946, is located in the approximate center of the combined area of Northampton and Lehigh Counties.

16. From the nature of plaintiff's business as a specialist in orthopedic surgery, from the situation of the parties and from all the attendant circumstances, the restrictive covenant given by defendant was and is in fact necessary for the fair protection of plaintiff in order to secure the benefits of the practice and the good will purchased by him from defendant on February 1, 1941.

17. The restrictive covenant given by defendant to plaintiff ancillary to the purchase by plaintiff of the practice and good will of defendant on February 1, 1941, did not and does not now in fact impose upon defendant an undue hardship.

18. The restrictive covenant given by defendant to plaintiff ancillary to the purchase by plaintiff of the practice and good will of defendant on February 1, 1941, did not and does not now do injury to the public in that the public in fact is not and has not been suffering by reason of having only one certified orthopedic surgeon; not only plaintiff, but other surgeons, medical practitioners, and doctors throughout the area of Northampton and Lehigh Counties have practiced and now practice orthopedic surgery and orthopedics, so that the public has not in fact suffered in its orthopedic needs.

## Discussion

The power of a court of equity to determine issues and award relief is limited by the allegations of the pleadings; a court of equity cannot go beyond that scope: 19 Am. Jur. 129, §128. Accordingly, we will not discuss arguments and testimony which are not material and relevant to the issues contained in the pleadings.

It is admitted that defendant opened an office for the practice of orthopedic surgery in the City of Bethlehem, Northampton County, Pa., and that he commenced, and has continued, to practice orthopedic sur-

gery since April 4, 1946, within the restricted area. The only defense to the bill in equity and to the application for injunctive relief is that the restrictive covenant is unenforcible for the reason that ancillary to the sale by defendant to plaintiff on February 1, 1941, of defendant's office and medical equipment, fixtures, supplies, practice as an orthopedic surgeon and good will for a consideration of $5,880, the written restrictive covenant as to practicing, which was restricted in area to Lehigh and Northampton Counties, but which was not restricted as to time, was at the time of the making and execution of the agreement "illegal and invalid in that the provision or covenant . . . imposed an unreasonable restraint upon defendant, was a greater restraint than necessary for the protection of the plaintiff to insure his success, was in restraint of trade, against the public interest and violative of public policy".

"What is injurious to the public interest is void on the ground of public policy": The Morris Run Coal Co. v. The Barclay Coal Co., 68 Pa. 173. We will consider these two propositions of the legal defense as one.

In essence, it is urged upon us, that public policy is fluctuating and varying so that, instead of following certain precedents, we should approach this problem as almost being one of first impression with no guides. The power of a lower court, however, to formulate pronouncements of "public policy" is sharply restricted. We cannot pioneer on legal issues which are squarely decided. Decisions of the appellate courts of Pennsylvania are binding on all the lower courts: Commonwealth v. Provident Trust Company (No. 1), 319 Pa. 385, 387; Townsend Trust, 349 Pa. 162. Until a decision of an appellate court is overruled or reversed by an appellate court, it is the law of this Commonwealth: Townsend Trust, supra, 168.

"As the right of private contract is no small part of the liberty of the citizen, the usual and most important

function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligations on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare. Rules which say that a given agreement is void as being against public policy are not to be extended arbitrarily, because 'if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be enforced by courts of justice.' The paramount public policy is that freedom to contract is not to be interfered with lightly.": 12 Am. Jur. 670, §172.

Parties may incorporate in their agreements any provisions subject to the limitation that the agreement must not be in violation of the Federal or State Constitutions, Federal or State statutes, some municipal ordinance or some rule of the common law, or violative of public policy: 12 Am. Jur. 641, §149. In the case at bar no Federal question is involved.

Under the Pennsylvania rule, the only authentic and admissible evidence of public policy of a State on any given subject is its constitution, laws, and judicial decisions, and the public policy of a State of which courts take notice and to which they give effect must be decided from those sources: Kreusler v. McKees Rocks School District, 256 Pa. 281. Sometimes it is also stated that public policy may be established by "general consent", but "general consent" is usually manifested by the constitution and laws of the State or by the judicial decisions of the courts of the State: Mohler's Estate, 343 Pa. 299, 303. For determination of its public policy as to contracts those sources are resorted to, although in some other jurisdictions a broader rule is followed: 17 C. J. S. 563, §211(b). The decision,

therefore, as to whether any acts or contracts or any other private arrangements contravene the recognized interests of society rests on the determination whether they conflict with the expressions or clear implication of the State's organic law or its statutes or judicial decisions: Mohler's Estate, supra, 303.

There are judicial precedents in Pennsylvania that agreements between physicians and surgeons not to practice their profession ancillary to a sale of the practice and good will thereof by one to another pursuing the same calling will be enforced where such contracts conformed to the rule of being partial in their restraint, founded upon a valuable consideration, and were reasonable in their operation. In the following cases covenants of physicians and surgeons, restricting their right to practice in certain localities, have been sustained as valid, where made in connection with the sale of their property and practice: Betts's Appeal, 10 W. N. C. 431, restraining the violation of an agreement by a physician not to practice his profession within five miles of a certain town, where made in connection with the sale of his property and practice at such place; McClurg's Appeal, 58 Pa. 51, enjoining the breach by a physician of an agreement never thereafter to establish himself as a physician within 12 miles of a certain place, where made in connection with the sale of his property and practice at such place; Paxson's Appeal, 106 Pa. 429, enjoining the breach by a physician of a covenant given for a consideration that he would not practice in a stipulated area for a period of 10 years; Wilkinson v. Colley, 164 Pa. 35, enjoining the breach by a physician of his agreement, based upon a valuable consideration, not to practice his profession within eight miles of a certain place for a period of 10 years; Gaul v. Hoffman, 5 Pa. C. C. 355, agreement of a physician not to practice within a radius of eight miles of a certain town; Johnson v. Mc-

Intyre, 309 Pa. 191, enjoining the breach by a physician and surgeon of an agreement not to reëngage in the practice of medicine and surgery within the radius of 15 miles from a borough, where made in connection with the sale of his property, office equipment, practice and good will. As applied to contracts by physicians and surgeons, relief for violation of these contracts will not be denied merely because the agreement is unlimited as to time, where as to area the restraint is limited and reasonable.

At the oral argument it was stated that in these cases the sole question decided was whether the restrictive covenant was reasonable in law and that the question was not raised whether the restraint would be against public interest and against public policy. We have inspected the paper books filed with the court at the time of argument before the Supreme Court in these Pennsylvania physician and surgeon cases, and find that in at least three cases the question, however, was raised either in the answer to the bill, or in the opinion of the lower court or in the brief filed with the appellate court; and we conclude that, if the restrictive covenant in the case at bar is reasonable as a matter of law, it is not in law against public interest and against public policy. See also Dwight v. Hamilton, 113 Mass. 175, which holds likewise.

Defendant avers the covenant is in restraint of trade and is illegal and invalid, even though it is only a partial restraint. A bargain in restraint of trade is illegal if the restraint is unreasonable: A. L. I. Restatement of Contracts, §514. In connection with this rule, for Pennsylvania cases which note that reasonableness of the restraint is the criterion of legality, see Pennsylvania annotations, pocket supplement, A. L. I. Restatement of Contracts §514. An agreement in partial restraint is valid and enforcible, if it is reasonable: 36 Am. Jur. 532 (Monopolies, Combinations, etc.), §51.

It is no objection to an agreement imposing a restraint reasonably limited in point of space, although unlimited in time of operation that it may continue during the whole life of the party restrained, regardless of the nature of the business or occupation restrained: 17 C. J. S. 624, §244. This rule applies to a contract in restraint of trade entered into by professional men such as physicians and surgeons: Ibid. McClurg's Appeal, supra; Paxson's Appeal, supra.

An agreement in restraint of trade, when limited in space, although unlimited in time, is prima facie good: Harris Calorific Co. v. Marra et al., 345 Pa. 464; Holland et al. v. Brown et al., 304 Pa. 545; Sklaroff et al. v. Sklaroff et al., 263 Pa. 421.

The presumption is that such contracts are legal, not illegal, and the burden is on him who sets up illegality as a defense in a suit to enforce such contract, to show how and why it is illegal: Harris Calorific Co. v. Marra, supra; Holland v. Brown et al., supra; Harbison-Walker Refractories Co. v. Stanton, 227 Pa. 55; Hosack et al. v. Taylor Bros., 142 Pa. Superior Ct. 83.

"A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it (a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or (b) imposes undue hardship upon the person restricted, or (c) tends to create, or has for its purpose to create, a monopoly, or to control prices or to limit production artificially, or (d) unreasonably restricts the alienation or use of anything that is a subject of property, or (e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good will or other subject of property or to an existing employment or contract of employment": A. L. I. Restatement, contracts, §515. This rule what is an unreasonable restraint of trade by contract has been adopted as the law of this State in Harris Calorific Co. v. Marra et al., supra.

A bargain by the transferor of property or of a business not to compete with the buyer in such a way as to injure the value of the property or business sold does not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly: A. L. I. Restatement of Contracts, §516 (a). Comment (b) on clause a is:

"If a sale of the business is made to one who previously was not a competitor, it is obvious that there is no diminution of competition by the sale and the promise accompanying it. It is true that there is less competition than there would be if the purchaser had entered the field as a competitor without making the purchase in question, but there is no certainty that he would have done this. . . . Nevertheless, a restrictive promise, if reasonably limited, is legal in such a case. Nor is the promise invalidated by the circumstance that nothing tangible is transferred so that the transaction amounts merely to the sale of good-will accompanied by a promise not to engage further in a competing occupation. The word 'business' includes a professional practice. . . . Illustrations of Clause (a):
. . .

"2. A sells B the assets of A's business and the good-will thereof, and agrees never to engage in a similar business in that town in competition with B. B's business extends throughout the town. Though the agreement is unlimited in time its limitation in space makes it reasonable": Restatement, Contracts, §516 (a).

For authorities that the foregoing rule 516 (a), comment (b) and illustration 2 are each a correct statement of the law in Pennsylvania, see Bett's Appeal, supra, McClurg's Appeal, supra, Paxson's Appeal, supra, Wilkinson v. Colley, supra, Johnson v. McIntyre, supra, and cases found in Pennsylvania annotations on rule 516 (a) in the pocket supplement.

A contract for the sale of a business whereby the seller agrees not to compete with the buyer, the covenant being a reasonable one for the protection of the latter in the conduct of the business purchased, is not objectionable on the ground that it creates or tends to create a monopoly. The most that can be claimed is that such a contract reduces by one the number of competitors. The business is open to all others: 41 C. J. 175, §176. The covenant operates simply to prevent the covenantor from engaging in the business which he sold, so as to protect the purchaser in the enjoyment of what he has purchased, and so as not to interfere with the value of the thing sold. The covenant by which the restraint is imposed must be incidental to and in support of a lawful sale of a business or professional practice. It is for this reason that the stipulation is ordinarily reasonable and valid: 17 C. J. S. 627, §246; A. L. I. Restatement of Contracts, §516(a), supra; Fuller v. Hope, 163 Pa. 62. A party may not derogate from his grant. Good faith requires of a party who has sold the good will of his business, that he should do nothing which tends to deprive the purchaser of its benefits and advantages: Hall's Appeal, 60 Pa. 458. He cannot injure or destroy the good will with which he has agreed that he will not interfere: Peterson et al. v. Johnson Nut Co., 204 Minn. 300, 283 N. W. 561; 32 C. J. 219, §339. He will be restrained from trying to regain what he had already sold.

In applying the law to the admitted facts of the case at bar, we have a situation where defendant prior to February 1, 1941, had been a busy, successful medical practitioner specializing in the practice of orthopedic surgery. He took a position as chief surgeon at the Bethlehem plant of Bethlehem Steel Corporation, preferring that position to conducting his large practice. It is of utmost importance that the relationship between defendant and plaintiff at the time of the execu-

tion of the agreement be kept in mind in order to test the legality and reasonableness of the restrictive covenant now sought to be enforced. Defendant contacted plaintiff, a certified orthopedic surgeon residing and practicing at Wilkes-Barre, Pa., and having no practice in Lehigh or Northampton Counties. Plaintiff visited defendant at the latter's office, where defendant submitted his offer and his own terms to sell his office and medical equipment, and his practice and good will as a certified orthopedic surgeon and plaintiff agreed to buy upon terms as fixed by defendant. The sale of the practice, good will and equipment and fixtures is not questioned as being illegal. Ancillary to and as an incident of the sale of the practice, defendant under his own terms gave the restrictive covenant involved in this suit.

There was no unreasonable attempt to eliminate competition on the part of plaintiff when defendant came to plaintiff entirely unsolicited and suggested selling out to plaintiff. Defendant knew, as did any business man know, that under such circumstances plaintiff would be unwilling to leave his native city and his practice at Wilkes-Barre, Pa., and to obligate himself to pay $5,880 for equipment and practice without some assurance on the part of defendant, and therefore when making his offer, defendant explained to plaintiff upon what conditions plaintiff could buy and defendant would sell. Defendant gave only the reasonable and sensible offer and plaintiff got only the reasonable and sensible assurance which any business man would want to have, namely, that he would secure proper protection for the business he was buying out and for the practice he was leaving in Wilkes-Barre. Such protection could only be obtained in securing the assurance of defendant, plaintiff's vendor, that if plaintiff purchased the business then defendant would not compete with him in Lehigh and Northampton Counties except as chief surgeon at the Bethlehem Steel Corporation.

Manifestly if any agreement on the part of defendant not to practice orthopedic surgery was necessary for the protection of plaintiff, the only scope or territorial extent for such restriction, which would be a reasonable and effective safeguard to plaintiff, would be the territory within which plaintiff would do business and that would be the same territory, Lehigh and Northampton Counties, where defendant theretofore had been practicing and the area from which he stated he drew his patients. The only restriction imposed on defendant, therefore, was that he would not practice, except as chief surgeon at Bethlehem Steel Corporation, within such territory from which he had drawn his patients and it was also the same territory from which plaintiff was expected to draw his patients by buying the good will of defendant and by getting his help and assistance to make plaintiff acquainted with defendant's patients, and hospital connections, and with the territory wherein he had a good will. Defendant was still at liberty to practice in the area as chief surgeon of the Bethlehem plant of Bethlehem Steel Corporation or to practice anywhere else in Pennsylvania or the United States outside of Lehigh and Northampton Counties, a liberty he then preferred to continuing his former practice. The contract imposed no undue hardship on defendant.

If, as defendant stated to plaintiff, the bulk of defendant's practice was done in Lehigh and Northampton Counties and if his patients came from the overall area of those counties, it is difficult to see how any injury to the public followed from the agreement. Plaintiff immediately commenced to carry on the former practice of defendant, maintained the same office for his patients, did the same work at the same hospitals where defendant had treated patients; and he attended and now attends patients from the same general overall area of Lehigh and Northampton Counties. Plain-

tiff gave and is giving the same services for the entire area which defendant had given. Defendant could practice his surgery as chief surgeon at Bethlehem Steel Corporation, where a tremendous segment of the population of Lehigh and Northampton Counties were employed and are employed. Under no stretch of the imagination can this be deemed to be either injuring the public or stifling competition. Nor did the contract drive defendant out of business. If he is no longer chief surgeon, it is due to a choice made by him five years after he made this valid contract, when he partially relinquished his employment and when he opened again a private office for himself and now remains only a medical member of the medical staff of Bethlehem Steel Corporation. The choice made without consent of plaintiff by defendant in July 1945, to reopen an office to practice orthopedic surgery in Lehigh and Northampton Counties, carried into effect on April 4, 1946, should not be permitted to deprive plaintiff of the benefits due the latter under the covenant.

A contract of this character must be given construction which will preserve its validity, if reasonably possible: Harris Calorific Co. v. Marra et al., supra. It is well settled that where an agreement is lawful in itself and is so limited as to place, although unlimited as to time, with a purpose to afford only necessary and proper protection to the covenantee, the agreement may be enforced, and this is particularly true with reference to a contract in restraint of a practice or profession in a locality where the place of the covenantor is supplied by the covenantee, a person of the same trade or profession. A covenant which is incidental to a sale or transfer of a business and which purports to bind the seller not to engage in the same business in competition with the purchaser is lawful and enforcible. While such covenants are designed to prevent competition it is ordinarily neither their purpose nor effect to stifle

competition generally in the locality, nor to prevent it at all in a way or to an extent injurious to the public. The business in the hands of the purchaser is carried on just as it was in the hands of the seller, the former merely takes the place of the latter; the services of the practice sold are as open to the public as they were before; the same competition exists as existed before; the amount of services is not lessened.

Defendant emphasizes the size of the two counties. That does not control. Bethlehem is a large city in the heart of the restricted area. A 15-mile radius from the limits of a municipality was not considered unreasonable in Johnson v. McIntyre (1932), supra. In considering the reasonableness of an agreement in restraint of trade, when limited to space, although unlimited in time, courts of equity will take into consideration the great reduction of the barriers of space and time which modern speedy means of transportation and communication have made: Holland et al. v. Brown et al., supra.

Too much emphasis cannot be placed on the number of hospitals and the number of hospital beds on the question of reasonableness. Defendant testified that at Easton Hospital, having 260 to 300 beds, he had, prior to February 1, 1941, three or four patients during that winter. There are numerous industries in the area, but any industry of any size has a plant physician; some like Bethlehem Steel Corporation have a regular surgical and medical staff. Defendant admits all doctors, "even the smallest general practitioner" have dealings with "bones and joints and muscles", which is the subject matter of orthopedic surgery. The specialist depends mainly for his patients on those other doctors refer to him. The referrals from the area in question seem to keep one orthopedic surgeon busy but there is no proof that by having two orthopedic surgeons, instanter the referrals double in number or even increase appreciably in number. For defendant

to urge he will not cut into plaintiff's practice and that he will not do injury to the good will he sold to plaintiff would be idle. But, he says plaintiff is a success, and that the purpose of the restrictive covenant was to insure his success. Such statement ignores the fact that he sold his practice and good will to plaintiff with a covenant not to compete in order that he would have the full benefit of the good will for which plaintiff has paid and is paying, with the written assurance that defendant not only would not compete but that he would assist and aid plaintiff to "do all in his power to procure the full benefit of the practice" and good will. It is suggested, although not established, that plaintiff is so busy that two should share the work. In a case of this kind, however, it is not a reason for refusing an injunction against the seller that the business is more extensive than the purchasing physician can attend to alone: 32 C. J. 218, §339; 28 Am. Jur. 300, §106; Marvel v. Jonah, 83 N. J. Eq. 295, 90 Atl. 1004. There is nothing in the law to prevent plaintiff, if his practice warrants it, employing an assistant to help in his practice: Ibid.

Defendant urges the covenant is too broad to be enforcible. We find no merit in this contention. The entire agreement indicates that the covenant was ancillary to a sale by defendant of his practice as orthopedic surgeon and nothing else. How an orthopedic surgeon can practice without being a medical practitioner, surgeon and physician we are not told. Whether defendant could be enjoined for practicing, in the restricted area, medicine which has no direct or indirect relation to orthopedic surgery is a question not now before us under the pleadings. An injunction may issue in a proper case on an implied covenant when there is a sale of a practice or business and the good will where the seller competes with the purchaser so as to derogate from his grant: 32 C. J. 218, §339. Relief, however,

in the case at bar need not be based on an implied promise. There is an express promise and it clearly indicates an intention that because of the sale of the orthopedic surgical practice and good will defendant "will do all in his power to procure the full benefit of the said practice to" plaintiff, and in terms, better expressed than in Stofflet v. Stofflet, 160 Pa. 529, expressed his intention that he will not compete with plaintiff in the practice of orthopedic surgery whether it be as a surgeon or as a mere physician or as a mere medical practioner in its aspect, except in his position at Bethlehem Steel Corporation. The evidence discloses not all practice in orthopedics is done by a certified orthopedic surgeon. We find no intent in the contract to restrict defendant in the practice of medicine which has no relation whatever to orthopedic surgery. Plaintiff's brief states there is no objection to defendant practicing in the restricted area, medicine or surgery which has no relation to orthopedic surgery in its vast field, if such practice can exist without interfering with the practice of orthopedic surgery which defendant sold to plaintiff.

There is no doubt that defendant as a practitioner to the general public is competing in the restricted area with plaintiff. If the restrictive covenant is assumed to be broader than the protection of the practice of orthopedic surgery, we have power to divide the terms of the contract and impose such restriction as is necessary to protect plaintiff.

"Where a promise in reasonable restraint of trade in a bargain has added to it a promise in unreasonable restraint, the former promise is enforceable unless the entire agreement is part of a plan to obtain a monopoly": A. L. I. Restatement of Contracts, §518. There is no attempt to obtain a monopoly in the instant case.

Injunctive relief will be granted to prevent breach by a physician of a covenant made in connection with the sale of his practice and the good will thereof binding him within certain limitations as to place, although not limited as to time, not to reëngage in the practice of his profession (McClurg's Appeal, supra) if the limitation is reasonable, or from doing any other act preventing the vendee from enjoying the benefit of the contract. Such an agreement is not forbidden by any sound principle of public policy, and is not regarded as differing in any material degree so far as its enforcement by injunction is concerned from similar agreements between tradesmen. The jurisdiction to grant the injunctive relief rests on the ground that the breach is a continuing irreparable one for which the remedy at law for damages is inadequate (Wilkinson v. Colley, supra) by reason of the uncertainty in any calculation of damages and because of the multiplicity of suits that would be necessary to obtain redress. Injunctive relief in cases of this character will not be conditioned upon the adequacy of the consideration for the agreement, if the contract shows on its face that there is a sufficient consideration, nor does the right of the complaining party to the aid of equity to restrain breach of the covenant depend upon the extent of the injury to his business which would result from the violation. It is sufficient that such injury be material and of a character that cannot be repaired. It is no reason for refusing the relief that the plaintiff's business is so large that he cannot cope with it alone. See 28 Am. Jur. 299, §106, 32 C. J. 221, §342, and 32 C. J. 218, §339.

We have therefore come to the following

### Conclusions of law

1. The contract wherein defendant sold his practice as a certified orthopedic surgeon with the good will thereof to plaintiff contains a covenant in restraint of

trade, ancillary to, and in support of, the sale of said practice and good will.

2. Said covenant in restraint of trade is partial in its restraint, founded upon a valuable consideration, reasonable in its operation, no greater than is required for the protection of the covenantee, imposes no undue hardship upon the covenantor, is not against public policy or the public interest.

3. The said covenant in partial restraint of trade is reasonable, valid, legal and enforcible.

4. By reason of defendant's opening and maintaining an office for the practice of orthopedic surgery in Bethlehem, Pa., and by reason of his practicing orthopedic surgery since April 4, 1946, in competition with the covenantee, in violation of the terms of said covenant, plaintiff is entitled to equitable injunctive relief, to restrain defendant from further and future violations, to the irreparable injury and material damage of plaintiff, for which there is no adequate remedy at law.

### Decree nisi

And now, to wit, May 28, 1946, it is ordered, adjudged and decreed as follows:

1. E. James Morrissey is permanently enjoined and restrained from maintaining any office within the limits of Lehigh and Northampton Counties in the Comonwealth of Pensylvania, for the purpose of practicing orthopedic surgery, during such period of time as C. R. Hanlon maintains any office within the limits of Lehigh and Northampton Counties for the practice of orthopedic surgery, and E. James Morrissey is ordered and directed to cease and desist maintaining his present office at New and Market Streets, Bethlehem, Pa., for the purpose of practicing orthopedic surgery; and

2. E. James Morrissey is enjoined and restrained from practicing in any capacity orthopedic surgery in

all its branches, within the limits of Lehigh and Northampton Counties, during such period of time as C. R. Hanlon maintains any office within the limits of Lehigh and Northampton Counties for the practice of orthopedic surgery, except that if E. James Morrissey resumes his position as chief surgeon, Bethlehem plant of Bethlehem Steel Corporation, he may, during his period of such employment, practice in that capacity, but in that capacity only.

3. Defendant is directed to pay the costs.

The prothonotary is directed to enter this decree nisi and to give notice thereof to the parties as well as their counsel, and unless exceptions thereto are filed within 10 days thereafter, either party may present a form of final decree to be entered in the case.

NOTE.—Exceptions were filed but were subsequently withdrawn. A final decree in conformity with the decree nisi was thereupon entered.