## Spectrum Colour Studios v. Woolaghan

*Thomas S. White*, for plaintiff.
*Donald J. Barley*, for defendants.

DOYLE, J., August 17, 1973.—

## FINDINGS

Plaintiff is engaged, at Monroeville, Pa., in the business of photographing teen-age music school, baton school and marching band groups and selling photographs to individual members of these groups. Plaintiff seeks to enjoin defendants, Gary Rittle (Rittle) and Dennis Woolaghan (Woolaghan), from competing and demands an accounting. Defendants counterclaim for unpaid wages and unreimbursed expense moneys and demand that plaintiff be enjoined from interfering with their business.

An "Agreement" prepared by plaintiff was signed and delivered by Rittle on June 18, 1971. This instrument, containing no covenants binding plaintiff, and not executed by plaintiff, names Rittle and "Spectrum Colour" as parties and provides, inter alia:

" [H]e or she will not go into the same type of business or be a competitor or go to a competitor with any of my ideas or knowledge learned while in my employment for at least three years after you leave my employment."

And,

" [H]e or she will not go into business of this type or the type of business I am using for my livelyhood [sic] for at least three years after you leave my employment in Pittsburgh and Ohio area."

Rittle commenced working for plaintiff during June of 1971, worked during that summer as a "proof passer," returned to college, returned to work for plaintiff during June of 1972, quit plaintiff's employment during February of 1973 to work for an employment agency, returned to work for plaintiff on March 10, 1973, and finally terminated his employment with plaintiff on May 14, 1973. Until February of 1973, Rittle received as compensation 15 percent of receipts from customers to whom he sold photographs. When he returned to work during March of 1973, he orally agreed with Jack Gussman (Gussman), a partner in plaintiff firm, for compensation based on a "$100 weekly guarantee" plus expenses.

Woolaghan was employed as a photographer by plaintiff on October 6, 1972, under an oral agreement providing for wages of $120 per week plus five percent commission on sales of photographs made by him. During November of 1972 he assumed additional duties as an "account representative" which entailed "booking" groups for photographing. On February 2, 1973, he was appointed branch manager of plaintiff's operation in Monroeville, Pa., and was to be reimbursed for expenses and be paid an additional five percent commission from "bookings" or photographs made by anyone for plaintiff. A few days prior to March 19, 1973, Gussman delivered to him a writing and told him to "sign the agreement or leave." He signed and delivered the writing to Gussman on March 19, 1973. That writing names Spectrum Colour and Woolaghan as parties, sets forth a partial schedule of compensation, and declares that customer lists and business practices are of great value to plaintiff and their revelation to others would damage plaintiff. The agreement provides, inter alia:

"[T]hat in the event of the termination of employment that he will not by himself or through another or others, participate in a similar business directly or indirectly call, service, solicit customers of the undersigned [sic] or customers of the company [sic] who were such during the course of employment of the undersigned by his above name employer, nor attempt to do so for a period of three years, and distance within a 150 mile radius, from the date of such termination, and further agrees that he will not directly or indirectly make known to any other person, firm or corporation, whether in competition with the said Spectrum Colour Photography [sic] or not, and [sic] information as to the identity or location of any such customers or accounts, nor as to any of said lists, nor any item, part or portion thereof during said three year period."

On April 30, 1973, Wollaghan terminated his employment with plaintiff.

A mass of testimony related to photographic work performed by defendants trading as "Beaux Art Studio," a partnership formed by them during May of 1973. Claims and counterclaims were asserted to the effect that much of that work and many of the persons and jobs "booked" by defendants resulted from "raiding" plaintiff's customer lists.

The customer lists were created by attending and observing public parades and discovering the names of marching groups and their leaders or directors. Other names were obtained from high school principals and from one Leo E. Allison, who sells confections to the groups for resale by them during fund-raising campaigns. All witnesses agreed that the directors and leaders change frequently and that, at best, the "lists" are of transient value.

Each defendant claims that moneys are due to him

by plaintiff for work performed while employed by plaintiff. The parties and counsel agreed in open court that the hearing was to be treated as a final hearing on all issues except demands for accounting of receipts and expenditures on jobs booked since May 1, 1973, and matters relating to any salaries, expenses and commissions due for work completed prior to May 1, 1973.

## ISSUES

The only presently justiciable issues are vel non: (1) enforceable noncompetition contracts exist between plaintiff and each defendant; (2) defendants should be enjoined from competing with plaintiff; (3) plaintiff should be enjoined from interfering with defendants' business.

## DISCUSSION

In limine, we note that plaintiff has not complied with the mandate of Pennsylvania Rule of Civil Procedure 2127, which provides:

"(a) A partnership having a right of action shall prosecute such right in the names of the then partners trading in the firm name."

No preliminary objection was filed by defendants; no petition to join individual partners was filed by plaintiff; no amendment was offered by plaintiff to cure the defect. See Goodrich-Amram §2127(a)-1 and (a)-2 and Procedural Rules Committee's Note to the rule. However, we may cure the defect by verdict, assuming that a decree, nisi or final, is so treated. See Morse v. Chase & Co., 4 Watts 456 (1835); Porter v. Cresson, 10 S. & R. 257 (1823). The testimony indicated that Gussman and his brother Lawrence were partners but nothing in the record indicates whether

the firm name is "Spectrum Colour Studios," as set forth in the caption of the complaint, or "Spectrum Colour Photography," section 4 of complaint and page two of exhibit "A" attached to the complaint; nor are any of the recited names registered in the Fictitious Name docket of this county.

The Rittle agreement was signed at a time when Rittle was a minor.[1] Its scrambled syntax alone makes construction difficult. It imposes no duties on "Spectrum Colour," the recited employer. It is not executed by the employer. It is not the complete agreement between the parties, since it contains no provision for compensation, a vital element to the employe. Plaintiff seeks to enforce the noncompetition clause for three years "after you leave my employment" or "at least three years," "in Pittsburgh and Ohio area." Plaintiff's place of business was located in the Borough of Monroeville. Rittle's place of business is located in the Borough of Munhall. The record contains no evidence that Rittle has ever conducted any business in competition with plaintiff in Pittsburgh or in Ohio. Even if we treat the last-quoted clause as meaning "the Pittsburgh *area*," plaintiff cannot prevail on this aspect of the case. All the evidence of defendants' competition relates to transaction which occurred in boroughs, townships and cities from 15 to 35 to 150 miles outside of Pittsburgh, and none in Ohio.

Rittle was a part-time employe of plaintiff for the summer of 1971, did not return to plaintiff's employment until the summer of 1972 and quit plaintiff's employment during February of 1973. He was *rehired* not as a "proof passer" working solely on a commission basis, but under a new oral agreement as

[1] This issue was raised *during trial,* but, in the present context of the matter, is not dispositive of the case. But cf: Pankas v. Bell, 413 Pa. 494 (1964).

salesman[2] with a "$100 weekly guarantee," plus expense reimbursement. No new writing was executed by Rittle in February 1973. The record contains evidence that Rittle was not paid for services he rendered to plaintiff. Plaintiff's claim that Rittle withheld moneys from plaintiff was completely refuted.

The Rittle writing does not rise to the dignity of an agreement enforceable by injunction. To be enforceable by injunction a noncompetition agreement must contain definite terms. This agreement imposes no obligations on plaintiff, is not executed by plaintiff, is incomplete in material respects, e.g., compensation, its language regarding the area of noncompetition is vague, e.g., "Ohio area," and finally, no proof was offered to show any breach by performing similar work "in Pittsburgh or Ohio area," of its noncompetition terms. Plaintiff has not proved any cause of action for an injunction against Rittle. See New Idea Pattern Co. v. Whitner, 215 Pa. 193 (1906); Hall's Appeal, 60 Pa. 458 (1869), and Restatement, Contracts, §370, which provides:

"Specific enforcement will not be decreed unless the terms of the contract are so expressed that the court can determine with reasonable certainty what is the duty of each party and the conditions under which performance is due."

Woolaghan worked for plaintiff from October 6, 1972, through March 18, 1973, under the terms of an oral contract, twice modified, November 1972 and February 1973. On March 1, 1973, when he signed and delivered the writing labeled exhibit "A," he assumed no new duties nor was any different compensation scheme agreed to by plaintiff. The writing provides that he will not compete with *the under-*

---

[2] The distinction between "proof passer" and salesman was not explained but evidently related to the compensation arrangement.

*signed.*" But there is no undersigned, plaintiff did not sign the writing. He is to refrain from competing *"within a 150 mile radius,"* but the initial point of the radius is not set forth; ergo, the extent of the interdicted territory cannot be ascertained.

Extant written language may raise implications or we may draw inferences from it, but we are not permitted to insert additional language into the writing under the guise of construing it. Nor are we permitted to rescue plaintiff from an improvident or poorly drawn contract. See Field v. Golden Triangle Broadcasting, Inc., 451 Pa. 410, 421 (1973).

Personal service contracts restraining competition which are ancillary to employment and unrelated to the sale of a business must be strictly construed: Hayes v. Altman, 438 Pa. 451 (1970). Even though we could find that the now-discovered Gussman brothers and plaintiff named in the caption is the other party to the Woolaghan writing, the area of noncompetition is too vague to be enforced. Even the language of the compensation to be paid is vague: "If the undersigned is also a Branch Office manager. [sic] Can hire photo per cent of net sales will be paid in addition to straight commissions." [sic] Such language is meaningless. An injunction will not be granted where the rights of plaintiff are not clear: Schwab v. Pottstown Borough, 407 Pa. 531 (1962).

Much of the testimony indicated that Woolaghan photographed many groups; some he had contacted while an employe of plaintiff; some had cancelled their contracts with plaintiff. Other evidence indicates that Woolaghan was not paid moneys due to him by plaintiff; that plaintiff's business was mismanaged or not managed at all by plaintiff; that plaintiff was steadily losing customers and employes, was

being harassed by bill collectors and constables with writs of execution, and that when Woolaghan finally terminated his employment, he had not been paid for more than one month, was owed substantial expense moneys in reimbursement for services rendered to plaintiff, and that plaintiff's Monroeville operation was almost defunct.

The Woolaghan writing, like the Rittle writing, was drawn, however inartfully, by plaintiff and must be construed in favor of defendants. It does not set forth any definite area of noncompetition. In fact, it was not signed by plaintiff and by its own terms, terms made by plaintiff, Woolaghan is only prohibited from competing with an unnamed "undersigned."

Plaintiff also demands that defendants be enjoined from "divulging or using any record card, price lists or data pertinent to customers, prospects or any trade secret acquired by defendants by reason of their employment with the plaintiff." However, the testimony clearly illustrates that defendants neither needed nor used any record card or data relating to customers or prospects and that such information was readily available to anyone who watched parades, visited high school principals or consulted with Mr. Allison. No evidence regarding price lists was introduced. The only statement relating to "trade secrets" is Gussman's assertion that he uses a "slightly different style" of doing business. Such assertions, however much repeated, do not amount to evidence, or even argument.

## CONCLUSION

The noncompetition covenants contained in the writings are not judicially enforceable. However, each

party agreed to and will be required to file an accounting. If subsequent testimony indicates that defendants have possession of any records of plaintiff, they will be directed to deliver them to plaintiff. Defendants' counterclaim demanding an injunction is dismissed because no proof was offered to sustain it. The caption will be amended to reflect the names of the partners of plaintiff.

An appropriate decree will be entered.

### DECREE NISI

And now, August 17, 1973, plaintiffs' demand for an order enjoining defendants from engaging in business as a competitor of plaintiffs is denied *and* defendants' demand for an order enjoining plaintiffs from making any statements concerning defendants' business to defendants' customers or potential customers is denied *and* defendants' demands for an award of money damages and counsel fees are denied.

Plaintiffs are ordered to file with these proceedings, on or before October 9, 1973, a full account of all work performed by defendants for plaintiffs from September 6, 1972, to May 14, 1973, listing each individual group photographed during said period of time and the receipts and expenditures relating to each such group and an account of all wages, salaries, commissions and expenses paid by plaintiffs to defendants during said period of time.

Defendants are ordered to file with these proceedings, on or before October 9, 1973, a full acount of all group photography work performed by them since they terminated their employment with plaintiffs, listing each individual group photographed during said period of time and the receipts and expenditures relating to each such group.

The prothonotary is ordered to amend the caption to read: "Jack Gussman and Lawrence Gussman, trading as Spectrum Colour Studios, a partnership, Plaintiff." No decree shall be entered by the prothonotary under Pa.R.C.P. 1519 until a final decree shall have been entered after accounts filed and arguments and exceptions, if any.